UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD EARL WILLIAMS,

                Petitioner,                             Case Number 17-10737

v.                                               Honorable David M. Lawson

SHAWN BREWER,

                Respondent.

_____/

**<u>OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS</u>**

Petitioner Ronald Earl Williams, a parolee under the supervision of the Michigan Department of Corrections, filed a habeas petition *pro se* on March 1, 2017. Williams was convicted of first-degree criminal sexual conduct at a bench trial in the Detroit Recorder's Court in 1977. He absconded before sentencing and served a lengthy term of incarceration in the state of Georgia for crimes committed there. Williams finally was sentenced in 2011 to a prison term of one to twenty years for the 1977 Michigan conviction.

Williams raises twenty-seven claims in his petition. These include allegations of ineffective assistance of counsel by both trial and appellate attorneys; errors by the trial court, including violations of his rights at sentencing; prosecutorial misconduct; and challenges to the jurisdiction of the sentencing court. Because none of the claims have merit, the petition will be denied.

I.

The Michigan Court of Appeals provides the following procedural history:

At a bench trial in 1977 in the former Detroit Recorder's Court, the court convicted defendant of first-degree criminal sexual conduct (CSC I), MCL 750.520b. Defendant failed to appear for his scheduled sentencing in 1978 and the trial court

entered a capias ordering law enforcement to take him into custody. Defendant fled to Georgia, committed new crimes in that state, and then served a prison sentence in Georgia for those crimes from June 1981 to October 2008. In June 2011, defendant arrived in custody in Wayne County for his prior failure to appear at sentencing. On July 14, 2011, the trial court sentenced defendant to a prison term of 1 to 20 years. The trial court denied defendant's post-judgment motion to set aside the sentence and dismiss the case for lack of jurisdiction, and it also denied defendant's motion for a new trial or to settle the record.

*People v. Williams*, No. 305917, 2014 WL 354628 at *1 (Mich. Ct. App. Jan. 30, 2014), *leave to appeal denied*, 496 Mich. 865, 849 N.W.2d 354 (2014) (Mem).

Limited court records are available from the petitioner's 1977 trial, as the transcripts have been destroyed and the judge and defense attorney are now deceased. Among the available records are the original charges and the investigator's report of the incident and the preliminary examination transcript. The complainant reported the petitioner forced her into a vehicle at gun point and took her to another location where he sexually assaulted her. The petitioner was charged with kidnapping and four counts of first-degree criminal sexual conduct. On November 18, 1977, he was convicted at a bench trial of a single count of first-degree criminal sexual conduct.

After absconding from Michigan, the petitioner served twenty-seven years in a Georgia prison for armed robbery and other offenses. He was then was paroled to Michigan in 2008. *Williams*, 2014 WL 354628 at *2. The petitioner asserts that while he was incarcerated in Georgia, he wrote to numerous authorities to resolve the Michigan conviction. *Ibid*. He provides as an example a 1982 letter from the U.S. Marshal addressed to him stating that a Michigan detainer against him had been lifted. *Id*.; ECF No. 12-8, PageID.499. The petitioner also argued that he attempted to contact the State of Michigan while serving his Georgia prison term to resolve the conviction, but he has provided the Court no evidence that he had done so, nor that he attempted to contact the state or Wayne County courts between his 2008 return to Michigan and his 2011 arrest for failure to appear. *Williams,* 2014 WL 354628 at *2-3.

The petitioner raised two issues in his direct appeal through appointed appellate counsel. Both issues were raised initially by the attorney in a motion before the trial court, which denied it following a hearing. The petitioner's first issue was that his rights to a speedy trial were violated by the 33-year delay before sentencing. The court of appeals disagreed, because of the lack of documentation of his diligence and his failure to resolve the outstanding conviction between his return to Michigan on parole in 2008 and his arrest in 2011. *Id.* at *3. In deciding that his speedy trial rights were not violated, the court found the petitioner largely responsible for the delay between his conviction and sentence. *Ibid*. On the same reasoning, the court rejected a challenge to the sentencing court's jurisdiction, ruling that a Michigan statute governing delayed sentencing on which the argument relied was inapplicable. *Id*. at * 4 (citing Mich. Comp. Law § 771.1).

The petitioner's second issue on direct appeal addressed the trial court's denial of his motion to settle the record or for a new trial. He argued that the lack of a trial record prejudiced his appellate rights. The court of appeals held that under such circumstances, a "presumption of regularity" applies, where "'[d]oubts should be resolved in favor of the integrity, competence and proper performance of their official duties by the judge and the State's attorney.'" *Id*. at *5 (quoting *People v. Iacopelli*, 141 Mich. App 566, 568; 367 N.W.2d 837, 837 (1985)). Again, because the petitioner was responsible for the delay between conviction and sentencing, and because he "identified no indisputable specific errors relative to the conviction," it affirmed the trial court's denial of the motion. *Ibid*.

The petitioner subsequently filed a motion for relief from judgment in the trial court under Michigan Court Rule 6.500 *et seq.*, in which he raised twenty-seven claims of error. In his motion (as well as his application for habeas relief), the petitioner stated generally that his blindness and hearing issues contributed to his difficulty in resolving his Michigan conviction while in prison in

Georgia.  The petitioner also argued in support of his sentencing challenges that his pre-sentence investigation report (PSIR) contained numerous inaccuracies or omissions, including the failure to note his successful compliance during his parole period, his participation in a program for the blind, and his college degree and enrollment in more college classes.

The trial court denied the petitioner's motion, finding that the petitioner did not establish good cause or prejudice for his failure to raise claims he could have brought in his direct appeal, as required by Michigan Court Rule 6.508(D).  Without further analysis, the court held that the petitioner's claims that his appellate counsel was ineffective were without merit.  The absence of ineffective performance by counsel prevented the petitioner from being able to establish good cause under the court rule.

The petitioner appealed the trial court's ruling. Both the Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal in standard form orders. *People v. Williams*, Docket No. 331938 (Mich. Ct. App. July 14, 2016), *leave denied,* 500 Mich. 926, 888 N.W.2d 93 (2017) (Mem).

The present habeas corpus petition states twenty-seven claims for relief, which consist of the two issues raised on direct appeal and twenty-five raised in his motion for relief from judgment in the state trial court:

    I.    The trial court denied Petitioner his Sixth Amendment rights to a speedy trial/sentencing, and Fifth Amendment rights to due process when it denied Petitioner-Appellant's motion to set aside judgment of sentence and dismiss case for lack of jurisdiction to sentence Defendant-Appellant.

    II.    The trial court erred when it denied Defendant-Appellant's motion for a new trial, or in the alternative to settle the record.

    III.    Defendant was denied his Sixth Amendment right to effective assistance of counsel when his appellate attorney failed to introduce favorable evidence in the form of a special motion.

IV.     Defendant was denied his Sixth Amendment right to effective assistance of counsel when Defendant's trial counsel failed to challenge the false information contained in the PSI report that was used during sentencing, and appellate counsel was ineffective for failing to raise the issue on direct appeal.

V.      Petitioner did not appear before the proper judge where the original judge to convict Petitioner was deceased and the appropriate successor judge was not used in violation of the U.S. Const., amends. V, VI, XIV.

VI.     Petitioner was denied a fair trial under the Sixth Amendment when the trial judge refused to honor the agreement to sentence Petitioner to time served.

VII.    Defendant was denied a fair trial under the Sixth Amendment when the sentencing judge made a mistake of law by stating that a prison term was mandatory under the conviction.

VIII.   The sentencing judge abused his discretion when he sentenced Petitioner to prison when a diversion program was available as an alternative which resulted in a fundamentally unfair trial. *See* U.S. Const. amends. V, XIV.

IX.     The sentencing judge committed error when he failed to make registration under the SORA part of the judgment of sentence, leaving it up to the MDOC to make the determination which resulted in a fundamentally unfair trial.

X.      Defendant was deprived of a fair trial under the Sixth Amendment when the trial judge did not ask Defendant or his attorney if they had an opportunity to review the PSI report prior to sentencing.

XI.     Defendant was denied his Sixth Amendment right to effective assistance of counsel when Defendant's trial counsel failed to review the PSI Report with Defendant prior to sentencing.

XII.    Defendant was denied his Sixth Amendment right to effective assistance of counsel when Defendant's trial counsel failed to suggest that Defendant be sentenced to the available diversion program.

XIII.   Defendant was harmed during a post-sentencing hearing when the prosecutor misrepresented a letter from the U.S. Department of Justice and U.S. Marshal's Office as being from the Georgia Department of Corrections and thus dismissed the letter as having no authority. The prosecutor's misconduct in this case was so egregious that it resulted in a fundamentally unfair trial.

XIV.    Defendant was deprived of a fair trial when the sentencing judge considered facts not found by a jury or admitted by the Defendant when sentencing Defendant.

XV.     Defendant was deprived of a fair trial and due process of law when the prosecutor suppressed favorable evidence that Defendant had attempted to resolve the charges against him in Georgia.

XVI.    Defendant was deprived of due process of law under the Fourteenth Amendment when the court sentenced Defendant without any records available from the 1977 conviction upon which to rely when making the sentencing determination.

XVII.   Defendant was denied his Sixth Amendment right to effective assistance of counsel when Defendant's appellate counsel failed to present the issue that the PSI report was inaccurate and misleading because the investigator failed to interview Defendant's parole officer regarding Defendant's arrest at the Canadian border.

XVIII.  Defendant was denied his Sixth Amendment right to effective assistance of counsel when Defendant's appellate counsel failed to present exculpatory documents to support her motion to set aside judgment.

XIX.    Defendant was denied his Sixth Amendment right to effective assistance of counsel when Defendant's appellate counsel failed to assist Defendant in filing a supplemental Standard 4 brief on appeal.

XX.     Defendant was denied his Sixth Amendment right to effective assistance of counsel when Defendant's appellate counsel falsified Defendant's affidavit in support of his motion to set aside the judgment of sentence.

XXI.    Defendant was denied his Sixth Amendment right to effective assistance of counsel when appellate counsel waived Defendant's presence at a post-judgment hearing to set aside the judgment of sentence.

XXII.   Defendant was denied his Sixth Amendment right to effective assistance of counsel when Defendant's trial counsel failed to interview and present witnesses that were valuable and necessary to the defense.

XXIII.  Defendant was harmed during a post-sentencing hearing when appellate counsel failed to object to the prosecutor's misrepresentation of a letter from the U.S. Department of Justice and U.S. Marshal's Office as being from the Georgia Department of Corrections and thus dismissed the letter as having no authority depriving Defendant of his Sixth Amendment right to the effective assistance of counsel.

XXIV.   Defendant was denied his Sixth Amendment right to effective assistance of counsel when appellate counsel failed to argue and present the facts that Petitioner was never charged with, nor found guilty of any gun charges, and Defendant was found not guilty of kidnapping.

XXV.     Defendant was denied his Sixth Amendment right to effective assistance of counsel when Defendant's appellate counsel failed to subject the prosecutor's case to meaningful adversarial testing.

XXVI.    Defendant's rights to be free from Double Jeopardy under the Fifth Amendment were violated when both Michigan and Georgia did not follow state laws or properly extradite Defendant in accordance with the Interstate Agreement, subjecting Defendant to Double Jeopardy and creating a jurisdictional defect.

XXVII.   Defendant was denied his Sixth Amendment right to effective assistance of counsel when Defendant's trial counsel failed to move for postponement of the sentencing hearing to retrieve the missing records of the 35-year-old case.

The respondent answered the petition, arguing that some of the claims first raised in the petitioner's motion for relief from judgment are subject to the defense of procedural default. The "procedural default" argument asserts that the petitioner did not preserve properly some of his claims in state court, and the state court's ruling on that basis is an adequate and independent ground for the denial of relief. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Court finds it unnecessary to address this procedural question. It is not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The procedural defense will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Because the petitioner filed his petition after the AEDPA's

effective date, its standard of review applies.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).
Under that statute, if a claim was adjudicated on the merits in state court, a federal court may grant
relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established Federal law, as determined by the Supreme
Court of the United States," or if the adjudication "resulted in a decision that was based on an
unreasonable determination of the facts in light of the evidence presented in the State court
proceeding."  28 U.S.C. § 2254(d).  "AEDPA also requires federal habeas courts to presume the
correctness of state courts' factual findings unless applicants rebut this presumption with 'clear
and convincing evidence.'"  *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (citing 28 U.S.C.
§ 2254(e)(1)).

      "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings,
as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419
(2014) (quotation marks and citations omitted).  "As a condition for obtaining habeas corpus from
a federal court, a state prisoner must show that the state court's ruling on the claim being presented
in federal court was so lacking in justification that there was an error well understood and
comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington
v. Richter*, 562 U.S. 86, 103, (2011).  The distinction between mere error and an objectively
unreasonable application of Supreme Court precedent creates a substantially higher threshold for
obtaining relief than *de novo* review.  Mere error by the state court will not justify issuance of the
writ; rather, the state court's application of federal law "must have been objectively unreasonable."
*Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation
marks omitted)).  The AEDPA imposes a highly deferential standard for evaluating state-court
rulings and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*,

559 U.S. 766, 773 (2010).  Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

Many of Williams's claims here were not addressed by the state appellate courts; the only reasoned opinion on the 25 claims presented in his post-conviction motion came from the trial court.  The state appellate courts rejected those claims in a perfunctory order denying leave to appeal.  "Where there has been one reasoned state judgment rejecting a federal claim," federal courts should presume that "later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Wilson v. Sellers*, --- U.S. ---, 138 S. Ct. 1188, 1194 (2018) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).  When the last state court to rule provides no basis for its ruling, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Ibid.*

And even though the state appellate courts did not give full consideration to some of Williams's federal claims on appeal, AEDPA's highly deferential standard for reviewing a habeas petitioner's constitutional claims applies here.  The petitioner must show that "the state court decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law' or involved an 'unreasonable determination of the facts.'" *Kelly v. Lazaroff*, 846 F.3d 819, 831 (6th Cir. 2017) (quoting 28 U.S.C. § 2254(d)).  That standard applies "even when a state court does not explain the reasoning behind its denial of relief." *Carter v. Mitchell*, 829 F.3d 455, 468 (6th Cir. 2016).  "Under [*Harrington*], '[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on its merits in the absence of any indication or state-law procedural principles to the contrary.'" *Barton v. Warden, S. Ohio Corr. Facility*, 786 F.3d 450, 460 (6th Cir. 2015) (quoting *Harrington*,

562 U.S. at 99). There is nothing in this record that suggests a basis for rebutting that presumption. *See Johnson v. Williams*, 568 U.S. 289, 303 (2013).

A.

To start, the petitioner argues that his Sixth Amendment speedy trial rights and Fifth Amendment rights to due process were violated by the delay in his sentencing, and that the delay deprived the court of jurisdiction to sentence him. The state court of appeals's rejection of this claim focused largely on whether the petitioner was sufficiently diligent in his attempts to resolve his outstanding 1977 conviction. It rejected the petitioner's argument that "any period of delay after 1982" should not be held against him "because he repeatedly asserted his right to a speedy trial." *Williams*, 2014 WL 354628 at *2. It found that "the entire period of delay is attributable to defendant." *Ibid*. The court's findings relied on the petitioner's "failure to produce documentary evidence of any letters he reportedly sent to Michigan or any other relevant letters he received in the Georgia prison[,]" *id*., and the lack of "independent documentation in support" of his contention that his parole officer told him there was no current warrant against him. *Id*. at *3. Finally, the court noted the petitioner's failure to resolve the matter with the State of Michigan or the Wayne County courts following his return to Michigan in 2008. *Id*. at *2.

This Court must "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro*, 550 U.S. at 473–74 (citing 28 U.S.C. § 2254(e)(1)); *see also Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013). The petitioner has not rebutted the presumption of the correctness of the state court's factual findings.

The court of appeals applied the correct legal standard to the petitioner's claim that his speedy trial rights had been violated. *Williams*, 2014 WL 354628 at *3. It cited the Sixth Amendment, Michigan Const. 1963, art 1, § 20, and Mich. Comp. Law § 768.1 as supporting such

rights and noted that Michigan case law extended the "speedy trial guarantee" to sentencing. *Williams*, 2014 WL 354628, at *1 (citing *People v. Garvin*, 159 Mich. App 38, 46, 406 N.W.2d 469 (1987)).

The state court applied a four-factor balancing test whose criteria are "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Ibid.* (citing *People v. Cleveland Williams*, 475 Mich. 245, 261, 716 N.W.2d 208, 218 (2006)). Federal courts apply the same test. *See United States v. Beigali*, 405 F. App'x 7, 14 (6th Cir. 2010) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). The court then concluded that

> although the delay of more than 33 years before defendant's sentencing may be considered excessive, defendant caused the entirety of the delay, did not substantiate his averments that he repeatedly invoked his speedy trial right, did not make a legal effort to protect his rights, and did not demonstrate prejudice related to the presentence delay.

*Williams*, 2014 WL 354628 at *3.

The petitioner argues that the over 30-year delay violated his speedy trial rights not only under state law, but under the Sixth Amendment. But the Supreme Court directly addressed the question whether the delay between conviction and sentencing implicates "the Sixth Amendment's speedy trial guarantee" and concluded it does not. *Betterman v. Montana*, --- U.S. ---, 136 S. Ct. 1609, 1612 (2016). The Court held that "the guarantee protects the accused from arrest or indictment through trial, but does not apply once a defendant has been found guilty at trial or has pleaded guilty to criminal charges." *Ibid.* It reasoned that because "the accused is shielded by the presumption of innocence," that protection "loses force upon conviction." *Id*. at 1614.

The Court expressly noted that its analysis and holding applied only to the Sixth Amendment speedy trial guarantee and not "the Due Process Clauses of the Fifth and Fourteenth Amendments" (as the petitioner argues here) because the petitioner in *Betterman* failed to raise the

- 11 -

latter argument. *Id*. at 1612. It observed in *dictum* that "[a]fter conviction, a defendant's due process right to liberty, while diminished, is still present. He retains an interest in a sentencing proceeding that is fundamentally fair." *Id*. at 1617.

Although the Sixth Circuit has addressed a due process challenge to delayed action after conviction, *see United States v. Ballato*, 486 F. App'x 573, 574 (6th Cir. 2012), circuit precedent may not serve as "clearly established Federal law" under 28 U.S.C. § 2254(d); only Supreme Court precedents may do so. *Parker v. Matthews*, 567 U.S. 37, 48 (2012). And in *Betterman*, the Court expressly declined to analyze the question of due process and delay between conviction and sentencing. 136 S. Ct. at 1612. Therefore, there is no clearly established law from the Supreme Court that applies a Sixth Amendment right to a speedy trial to a delay between conviction and sentencing, nor one that supports finding a violation of due process under those circumstances.

Finally, the petitioner argues that Michigan Compiled Law § 771.1 divested the trial court of jurisdiction. However, state law as interpreted by state courts does not provide a basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 n.2 (1991); *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000). A state court's failure to follow state rules or procedures is also a matter of state law not cognizable in a federal habeas corpus action. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988). Only if the proceedings were "so fundamentally unfair as to have deprived appellant of substantive due process in violation of the U.S. Constitution," may a federal court grant relief. *Norris v. Schotten*, 146 F.3d 314, 329 (6th Cir. 1998) (citing *McGuire*, 502 U.S. at 67-68; *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993)).

A federal habeas court will not review whether a state statute vests jurisdiction on a state court in a criminal case. *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976). "[A] state court's

interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review." *Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001).

In the petitioner's direct appeal, the state court noted that under section 771.1, "a loss of personal jurisdiction over a defendant occurs only if no good cause exists to justify 'a delay of more than a year in sentencing.'" *Williams*, 2014 WL 354628 at *4 (citing *People v. Richards*, 205 Mich. App. 438, 444; 517 N.W.2d 823, 826 (1994)). It held that the petitioner's responsibility for the delay in his case constituted such good cause, and therefore, the trial court had jurisdiction. *Ibid*. The state court made reasonable determinations that the sentencing court had jurisdiction and that the petitioner's speedy trial rights were not violated.

## B.

The Michigan Court of Appeals also cited the petitioner's lack of diligence when it affirmed the trial court's denial of his motion for a new trial or an opportunity to settle the record. The petitioner argued that he was innocent and was prejudiced in his ability to raise issues on appeal by the absence of the trial record. He asserted further that had he been extradited by the State of Michigan from Georgia in a timely manner, the record would not have been lost and he would have been able to raise his appeal.

The state court disagreed, citing state precedent that rejected the idea that the loss of the trial record mandated automatic reversal. *Williams*, 2014 WL 354628 at *4 (citing *Iacopelli*, 141 Mich. App. at 568, 367 N.W.2d at 837-38). That precedent acknowledged the constitutional right to appeal but said that right must be balanced against the defendant's misconduct, especially in the "extreme" case of the nine-year delay caused by him. *Iacopelli*, 141 Mich. App. at 569, 367 N.W.2d at 838.

*Iacopelli* relied on *Bute v Illinois*, 333 U.S. 640 (1947), which held that doubts about whether a defendant received "fair judicial process . . . should be resolved in favor of the integrity, competence and proper performance of their official duties by the judge and the State's attorney." *Id*. at 671. The state court also cited *Norvell v. State of Illinois*, 373 U.S. 420 (1963), which held that when a transcript is not available through no fault of the state, and the defendant had the services of a lawyer, a new trial may be denied. *Norvell*, 373 U.S. at 423.

The Sixth Circuit has held that "federal habeas relief based on a missing transcript will only be granted where the petitioner can show prejudice." *Jackson v. Renico*, 179 F. App'x 249, 252 (6th Cir. 2006) (citing *Bransford v. Brown*, 806 F.2d 83, 86 (6th Cir. 1986)). In finding no prejudice, the *Bransford* court considered as dispositive the petitioner's failure to make a "specific allegation of error," and added that the "'petitioner must present something more than gross speculation that the transcripts were requisite to a fair appeal.'" *Ibid*. (quoting *Bransford*, 806 F.2d at 86). *Bransford* stated that *Norvell* "govern[ed] the case at hand." 806 F.2d at 85 (citing *Norvell*, 373 U.S. at 423). As in *Bransford*, the petitioner here has failed to make more than a "gross speculation" that the transcripts are essential to an appeal.

The state court's factual determination that the petitioner was responsible for the extensive delay between his conviction and sentencing is reasonable. The state court's reliance on state cases that draw on clearly established Supreme Court precedents indicate that it applied the correct legal principles. And, as noted earlier, its fact finding is presumed correct.

The petitioner is not entitled to habeas relief on this issue.

C.

The petitioner raises several claims relating to the sentence and sentencing procedures (Claims V through X, XIV, and XVI). He argues first that he was sentenced by the "wrong judge."

- 14 -

There is no federal constitutional right to be sentenced by the trial judge or the judge who accepted a petitioner's guilty or no-contest plea. *United States ex rel. Fields v. Fitzpatrick*, 548 F.2d 105, 107 (3d Cir. 1977) (state criminal defendant had no federal constitutional right to be sentenced by his trial judge) (other citations omitted).

Next, he argues that his attorney told him there was a sentencing agreement whereby the judge would sentence him to time served (referring to his prison term in Georgia) and that the judge disregarded the agreement when he sentenced the petitioner to one to twenty years. The petitioner provided no evidence of the existence of such an agreement. Nor does he cite any action taken on his part that would constitute consideration and therefore support the possible existence of a bargained-for agreement. *See Santobello v. New York*, 404 U.S. 257, 262 (1971). This claim cannot survive *Richter*'s requirement that a petitioner must demonstrate "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

In three of his claims, the petitioner contends that the sentencing judge erred by stating a sentence of incarceration was mandatory, by failing to sentence the petitioner to a diversion program, and by failing to include the sex offender registration requirement on the petitioner's judgment of sentence. All three issues raise matters of state law, and therefore do not entitle him to federal habeas relief. *Estelle*, 502 U.S. at 67-68 n. 2. In addition, none are "sufficiently egregious" as to present a violation of the petitioner's equal protection or due process rights. *Rupert v. Berghuis*, 619 F. Supp. 2d 363, 369-70 (W.D. Mich. 2008) (citing *Koras v. Robinson*, 123 F. App'x 207, 213 (6th Cir. 2005)).

The petitioner argues next that his right to review and correct his pre-sentence investigation report was violated by the sentencing court. There is no federal constitutional right to a pre-sentence investigation and report. *Bridinger v. Berghuis*, 429 F. Supp. 2d 903, 909 (E.D. Mich.

2006).  The right to due process is not abridged by the mere presence of hearsay or inaccurate information in a pre-sentence report.  *Hili v. Sciarrotta,* 140 F.3d 210, 216 (2d Cir. 1998).  And to prevail on a claim that a trial court relied on inaccurate information at sentencing, a habeas petitioner must demonstrate that the sentencing court relied upon this information and that it was materially false.  *Collins v. Buchkoe,* 493 F.2d 343, 345–346 (6th Cir. 1974).  Williams has not done so.  Williams also contends that the trial court erred by failing to ask if the petitioner and his attorney had reviewed his pre-sentence report and whether they had an opportunity to correct its inaccuracies in violation of Michigan Court Rule 6.429.  Once again, that is not cognizable on federal habeas review because it solely involves an issue of state law.  *Anderson v. Kapture*, No. 02-70751, 2019 WL 197334, at *2 (E.D. Mich. Jan. 14, 2019) (citing *Estelle*, 502 U.S. at 68).

The petitioner argues that the sentencing judge considered facts not found by a jury or admitted by him, in violation of the rule in *Alleyne v. United States*, 570 U.S. 99 (2013), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Those cases prohibit a sentencing judge to find facts that increases the statutory minimum and maximum sentences.  *Alleyne*, 570 U.S. at 111-112.

The petitioner says that the sentencing judge calling the offense "horrific" and further stating, "[a] gun to the head, a woman taken off of the street by someone she did not know" amounts to impermissible factfinding.  However, the judge's statements were not made at the petitioner's July 2011 sentencing, but rather at a hearing more than a year later on the petitioner's motion to set aside the sentence.  *See* Mot. Hr'g Tr., 10/5/12, ECF No. 12-6, PageID.396.  At that hearing, the sentencing judge repeatedly expressed incredulity over the lenient sentence for first-degree criminal sexual conduct that he had imposed on Williams the year before.  At the actual sentencing, the judge provided no explanation or basis for the one- to twenty-year sentence he

ordered.  There is no support for the claim that the judge relied on facts not found by a trier-of-fact or admitted by him.

In the petitioner's final challenge to his sentence, he objects to the court's sentencing him without any records available from the 1977 conviction.  As noted above, the trial court did not explain the sentence it imposed.  Therefore, the record provides no basis to find that the petitioner's sentence was "imposed on the basis of material 'misinformation of constitutional magnitude,'" and thus a potential violation of due process.  *Roberts v. United States*, 445 U.S. 552, 556 (1980)).  Under *Richter*, this Court must determine what theories might have supported the state court's denial of relief on this issue.  *Richter*, 562 U.S. at 102.  The petitioner was convicted of first-degree criminal sexual conduct, subject to a term of incarceration of life or any term of years.  Mich. Comp. Laws § 750.520a(2)(b).  A one- to twenty-year sentence for a life offense is, as the trial court later noted, a lenient sentence.  The trial court's rejection of the petitioner's challenge of that sentence was reasonable.

### D.

The petitioner presents claims that his trial attorney was constitutionally ineffective (Claims IV, XI, XII, XXII, XXVII), and his appellate counsel also was ineffective (Claims III, IV, XVII to XXI, XXIV, XXV).

An ineffective assistance of counsel claim has two components.  A petitioner must show that counsel's performance was deficient, and that deficiency prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  An attorney's performance meets the first prong when "counsel's representation [falls] below an objective standard of reasonableness."  *Id*. at 688.  The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*. at 687.  "Judicial scrutiny of

counsel's performance must be highly deferential." *Id*. at 689.  The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.  Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

Success on ineffective assistance of counsel claims is relatively rare, because the *Strickland* standard is "'difficult to meet.'" *White*, 572 U.S. at 419 (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013)).  And under AEDPA, obtaining relief under *Strickland* is even more difficult because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal citations and quotation marks omitted).  This doubly-deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013).  "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

In Claims IV and XI, the petitioner contends that his trial counsel was ineffective because he did not object to errors in the presentence report and appellate counsel performed deficiently by not raising that issue on appeal. He also faults his trial attorney for not reviewing the presentence report with him. Prevailing professional norms certainly mandate that defense counsel share a presentence report with the defendant and object to inaccurate information. And it is understood that criminal defendants have a due process right to a sentence based on accurate information. *United States v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 740–41 (1948). However, the petitioner cannot demonstrate that his sentence was based on any of the inaccurate information in his presentence report, because the trial court provided no explanation for its sentence. So regardless whether trial counsel's performance fell below objective norms, the petitioner cannot establish that he was prejudiced by the failures to review and correct the presentence report. For the same reasons, Claims VI and XVII also fail, as the petitioner cannot demonstrate that he was prejudiced by his appellate counsel's failure to raise the issue of his inaccurate PSIR on appeal.

The petitioner also criticizes trial counsel's failure to request a diversion program in lieu of prison time, Claim XII, or to seek postponement of the sentencing to recover the record, Claim XXVII. But, as noted above, diversion was not an available alternative under state law (the statute of conviction required a term-of-years sentence, Mich. Comp. Laws § 750.520a(2)(b)). An attorney is not ineffective for failing to attempt a futile action. *See United States v. Sanders*, 404 F.3d 980, 986 (6th Cir. 2005); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000). Counsel's failure to pursue diversion does not fall below objective professional norms. Similarly, with the lapse of thirty-five years between the offense and the petitioner's sentencing, and the death of major parties and destruction of transcripts in the interim, a request for postponement

likely would have been futile.  Moreover, considering the judge's later-expressed concern that the sentence imposed was inadequate for the circumstances, the petitioner was not prejudiced by the absence of the record. It appears more likely that he was advantaged by that lack.

In Claim XXII, the petitioner argues that trial counsel failed to interview and present necessary witnesses. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Rayner v. Mills*, 685 F.3d 631, 640 (6th Cir. 2012) (citing *Strickland*, 466 U.S. at 691).  But when evaluating counsel's decisions whether to investigate, a court must "apply[] a heavy measure of deference to counsel's judgments." *Wiggins*, 539 U.S. at 522 (citing *Strickland*, 466 U.S. at 690-91).

When a habeas petitioner predicates an ineffective-assistance-of-counsel claim on a failure to call a witness, he must provide the content of the missing witnesses' potential testimony. *Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007).  Without such a proffer, a petitioner cannot establish "that his counsel performed deficiently or that he was actually prejudiced." *Ibid*. (citing *Stewart v. Wolfenbarger*, 468 F.3d 338, 353 (6th Cir. 2006)).  The petitioner here listed the prospective witnesses he sought to have his trial and appellate counsels contact and interview. *See* Pet., ECF No. 1-1, PageID.160.  But the substance of their testimony was based only on his say-so.  He did not fortify his summary with any affidavit or witness statement.  That does not meet the requirements of *Strickland* or *Clark*.

Appellate counsel did not escape the petitioner's criticism.  He argues that appellate counsel failed to introduce a "special motion" (Claim III); failed to present exculpatory documents (Claim XVIII); and failed to argue that the petitioner was not charged with or convicted of a gun crime (Claim XXIV).  Claims of ineffective assistance of appellate counsel are evaluated under the same standard that applies to trial counsel. *Richardson v. Palmer*, 941 F.3d 838, 858 (6th Cir.

2019) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)). That means that the "doubly deferential" standard described above (combining AEDPA and *Strickland*'s two-prong test) governs this issue. *Lazaroff*, 846 F.3d at 832.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

The petitioner was not constitutionally entitled to have his appellate attorney press on appeal all the issues he raised with her. The "special motion" the petitioner sought was based on alleged evidence of prosecutorial misconduct and police intimidation he provided appellate counsel. His "exculpatory evidence" purported to clear up an "issue of identity" not otherwise explained. Neither of these claims present arguments that appear "plainly stronger" than those brought by appellate counsel in the direct appeal. *Richardson*, 941 F.3d at 858.

The argument that the petitioner was not convicted of a gun crime or kidnapping is not compelling. Although his assertion may be technically correct, the petitioner *was* convicted of a charge that included the use of a weapon (or "an article fashioned" to appear as a weapon) as the basis for first-degree criminal sexual conduct. The petitioner fails to explain how this argument would have resulted in a different outcome; he cannot establish prejudice for this omission.

In Claim XIX, the petitioner contends that his appellate attorney was constitutionally ineffective when she failed to assist him in filing a supplemental *pro se* brief on appeal. Standard

4 of the Michigan Assigned Counsel rules permits a criminal defendant to file a *pro se* brief within 84 days after his or her lawyer files a brief on appeal. *See* Mich. Ct. App. IOP 7.212(F)-3 (stating that the administrative order permits "indigent defendants represented by appointed counsel [to] raise issues in [the Michigan appellate courts] that their attorneys decline to raise"). The rules were promulgated by the Michigan Supreme Court in 2004. *See* Admin. Order 2004-6, 471 Mich. cii (2004).

The petitioner has not identified any "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), that entitles him to assistance from his lawyer in filing a supplemental brief of his own. The purpose of the state court rule is to permit a defendant to advance issues on appeal that his or her appellate attorney did not deem worthy of pursuing. And since there is no "constitutional right to self-representation on direct appeal from a criminal conviction," *Martinez v. Ct. of App. of Cal., Fourth App. Dist.*, 528 U.S. 152, 160, 163 (2000), assigned appellate counsel's performance cannot be deemed deficient when he or she does not help the defendant brief rejected appellate issues. *See McMeans v. Brigano*, 228 F. 3d 674, 684 (6th Cir. 2000) (stating that the holding in *Martinez* that there is no right to self-representation on appeal "contradicts the petitioner's assertion that there exists a constitutional entitlement to submit a *pro se* appellate brief on direct appeal in addition to the brief submitted by appointed counsel") (citing *Martinez*, 528 U.S. at 164).

In Claim XX, the petitioner says that his appellate attorney "falsif[ied] his affidavit" in support of a motion to set aside his sentence. But he never describes how the affidavit was changed. He states only that the affidavit "described what happened in the court room when Defendant handed documents prepared by the U.S. Marshal's office to the prosecutor in the absence of Defendant's attorney." Pet., ECF No. 1-1, PageID.157. By failing to explain the

purported alteration as well as how he was prejudiced by it, the petitioner fails to meet his burden of demonstrating ineffective assistance and his entitlement to habeas relief.

Nor was the petitioner's appellate counsel ineffective by failing to ensure his attendance at a motion hearing (Claim XXI). A "defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (citing *Snyder v. Massachusetts,* 291 U.S. 97, 108 (1934)). Where the defendant's presence has no "relation, reasonably substantial, to the fullness of his opportunity to defend against the charge" — such as a competency hearing — no due process violation occurs. *Ibid.* A defendant's presence at a hearing is "largely a matter of form" when, as here, he or she is represented by an attorney at a hearing which raises largely legal issues. *Cathron v. Jones*, 190 F. Supp. 2d 990, 1001-02 (E.D. Mich. 2002). No habeas relief is warranted on this claim.

Finally, in arguing that appellate counsel failed to subject the prosecution's case to "meaningful adversarial testing" (Claim XXV), the petitioner cites his attorney's failure to re-raise the issue of his diligence in pursuit of resolving the Michigan conviction and to object to a statement by the prosecutor at a motion hearing. Neither of these purported omissions fall below the objective standard of reasonable representation, nor would they have changed the outcome of the proceedings.

## E.

The petitioner also contends that the prosecutor committed misconduct, which deprived him of fair proceedings. He says that at the post-sentencing motion hearing, the prosecutor misrepresented a letter from the United States Department of Justice and the U.S. Marshal's Office as being from the Georgia Department of Corrections (Claim XIII). And he argues that the

prosecutor "suppressed" favorable evidence that supported his contention he attempted to resolve the Michigan conviction while serving time in Georgia (Claim XV).  Neither claim has merit.

A prosecutor's misconduct will require habeas corpus relief when the conduct complained of "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) and calling *Darden* the "clearly established Federal law" on the issue).  *Parker* notes that "the *Darden* standard is a very general one," which permits state courts "more leeway . . . in reaching outcomes in case-by-case determinations[.]"  *Id*. at 48 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  On habeas review, the AEDPA raises the bar even higher than the "high standard" set by *Darden*.  *Halvorsen v. White*, 746 Fed. App'x 489, 499 (6th Cir. 2018) (citing *Parker*, 567 U.S. at 48).  To obtain habeas relief, "[t]he misconduct must so clearly violate *Darden* that the state court's failure to identify it was not just erroneous, but 'objectively unreasonable.'"  *Id*. at 497 (citing *Williams*, 529 U.S. at 409).  *Darden* itself did not find unconstitutional a prosecutor's characterization of the defendant as an "animal" or his expressed wish that he "could see [the defendant] with no face, blown away by a shotgun."  *Darden*, 477 U.S. at 180, nn.11, 12.  Even where prosecutors' statements are so extreme as to be "universally condemned," the inquiry remains whether due process was denied.  *Id.* at 181.

Here, the petitioner complains of one instance of the prosecutor misrepresenting the source and contents of a letter.  The state court's rejection of this claim was reasonable, because that action did not implicate any of the petitioner's rights, nor did it "so infect[]" the proceedings "with unfairness" as to deny the petitioner a fair sentence.  *Parker*, 567 U.S. at 45.

The petitioner argues that his appellate attorney was ineffective by not objecting to this error by the prosecutor (Claim XXIII). Because the petitioner's rights were not violated by that remark, he is unable to establish any prejudice from his attorney's failure to object.

The petitioner's claim that the prosecutor "suppressed" evidence is governed by *Brady v. Maryland*, 373 U.S. 83 (1963). "In *Brady*, the Supreme Court held that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Bell v. Bell*, 512 F.3d 223, 231 (6th Cir. 2008) (citing *Brady*, 373 U.S. at 87). The duty to disclose applies "'to evidence material to sentencing.'" *Jefferson v. United States*, 730 F.3d 537, 554 n.4 (6th Cir. 2013) (citing *United States v. King*, 628 F.3d 693, 704 (4th Cir. 2011)). However, if the evidence in question is available to the defendant, no *Brady* violation occurs. *Spirko v. Mitchell*, 368 F.3d 603, 610 (6th Cir. 2004) (citing *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991); *United States v. Wilson*, 901 F.2d 378, 380 (4th Cir. 1990)) (other citations omitted).

The letters the petitioner references were the petitioner's own evidence, copies of which he provided to the prosecutor and to his trial counsel. The petitioner argues that in not presenting the evidence to the court as he expected, the prosecutor "suppressed" the evidence. He did not. Applying *Spirko*, the prosecutor could not "suppress" the petitioner's own evidence in violation of his constitutional rights.

F.

Finally, the petitioner argues that he was not properly extradited to Michigan "in accordance with the Interstate Agreement," which subjected him to double jeopardy and left the court without jurisdiction (Claim XXVI). He references the "180 day rule," which appears to be

a citation of Article III(a) of the Interstate Agreement on Detainers as adopted in Michigan. *See* Mich. Comp. Laws Ann. § 780.601. However, the Supreme Court has reiterated that "[t]he language of the Agreement . . . makes clear that the phrase 'untried indictment, information or complaint' in Art. III refers to criminal charges pending against a prisoner." *Carchman v. Nash*, 473 U.S. 716, 725, 727 (1985). The petitioner has not cited, and this Court has not found, any clearly established Supreme Court precedent that extends the IAD's protections to his post-conviction circumstances, in which "untried" charges are no longer "pending."

Moreover, both the Supreme Court and the Sixth Circuit have held that a violation of extradition procedures does not undermine a fugitive's conviction or the jurisdiction of the court in the receiving state. *Reed v. Farley*, 512 U.S. 339, 348 (1994) (holding a trial court's failure to observe the speedy trial provision in the Interstate Agreement on Detainers "not cognizable under § 2254"); *Curtis v. United States*, 123 F. App'x 179, 184 (6th Cir. 2005) ( holding that "alleged violations of the Interstate Agreement on Detainers are not cognizable under . . . Section 2254" absent "a fundamental defect which inherently results in a complete miscarriage of justice") (citing *Metheny v. Hamby*, 835 F.2d 672, 673 (6th Cir. 1987); *Mars v. United States*, 615 F.2d 704 (6th Cir. 1980)).

The petitioner has not developed the remainder of this claim, which refers to the Double Jeopardy Clause. The Sixth Circuit has held that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *United States v. Gray*, 692 F.3d 514, 521 (6th Cir. 2012) (citing *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010)). The petitioner is not entitled to habeas relief on this claim.

III.

None of the petitioner's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d).  The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.  The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   September 30, 2020